IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

JANA N. KNOWLES                                                     PLAINTIFF

   V.                                                       CAUSE NO: 1:06CV224-EMB

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY                          DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Jana Knowles, seeks judicial review pursuant to Section 405(g) of the Social Security Act (the "Act") of an unfavorable final decision of the Commissioner of the Social Security Administration (the "Commissioner"), regarding her application for Supplemental Security Income ("SSI") under Title XVI. The parties have consented to entry of final judgment by the undersigned United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Fifth Circuit. Having duly considered the briefs of the parties, the administrative record and the applicable law, the Court rules as follows.

## Administrative Proceedings

Plaintiff filed an application for SSI on August 26, 2004, alleging a disability onset date of September 1, 1998. (Tr. 12, 55). The application was denied initially and on reconsideration. (Tr. 18-25, 19, 28-31). Plaintiff filed a request for an administrative hearing (Tr. 37). An administrative hearing was held on August 16, 2005, during which Plaintiff and a vocational expert testified. (Tr. 235-56). In a hearing decision dated March 3, 2006, an ALJ found that Plaintiff was not disabled as defined in the Act. (Tr. 12-17). The ALJ's hearing decision became perfected as the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on June 7, 2006, after the consideration of additional evidence. (Tr. 4-7, 223-34). The

ALJ's final hearing decision is now ripe for review under section 205(g) of the Social Security Act, 42 U.S.C. §405(g).

## Facts

Plaintiff was born October 20, 1979 (Tr. 18), and was 25 years of age at the time of the hearing decision on March 3, 2006. (Tr. 17). She completed high school and earned an undergraduate degree in secondary education. (Tr. 79). Plaintiff previously worked as a cashier/clerk, graduate assistant, and in a furniture factory. (Tr. 73). Plaintiff alleged that she could no longer work due to epileptic seizures. (Tr. 72). However, after a careful review and evaluation of the medical evidence of record, the subjective testimony at the hearing (Tr. 235- 50), and the testimony of a vocational expert (Tr. 250-53), the ALJ found Plaintiff not disabled (Tr. 12-17). Contrary to Plaintiff's allegation of disability, the ALJ found that she had the residual functional capacity ("RFC") to perform work at all exertional levels, except for work that required climbing ladders, ropes, or scaffolding, work at unprotected heights or around moving and dangerous machinery, or work that required driving. (Tr. 15).

## Standard of Review

This Court reviews the Commissioner's/ALJ's decision only to determine whether it is supported by "substantial evidence" on the record as a whole and whether the proper legal standards were applied. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). Furthermore, in applying the substantial evidence standard, this Court scrutinizes the record to determine whether such evidence is present. This Court will not re-weigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Id.*, citing *Haywood*

*v. Sullivan*, 888 F.2d 1463, 1466 (5th Cir. 1989); *see also Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001).

**Law**

To be considered disabled and eligible for benefits, Plaintiff must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 to 404.1599 & Appendices, §§ 416.901 to 416.998 1995. The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity.[1] *Id*. §§ 404.1520, 416.920; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994);

---

[1]The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled. *Id*. §§ 404.1520(c), 416.920(c).

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence. *Id*. §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated. If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled. *Id*. §§ 404.1520(e), 416.920(e).

*Moore v. Sullivan*, 895 F.2d 1065, 1068 (5th Cir. 1990). The five-step inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

The claimant has the burden of proof under the first four parts of the inquiry. *Id*. If she successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy, which the claimant is capable of performing. *Greenspan*, 38 F.3d at 236; *Kraemer v. Sullivan*, 885 F.2d 206, 208 (5th Cir.1989). When the Commissioner shows that the claimant is capable of engaging in alternative employment, "the ultimate burden of persuasion shifts back to the claimant," *Id*.; *accord Selders*, 914 F.2d at 618.

The Court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) his age, education, and work history," *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence." *Id*.

## Analysis

Plaintiff raises four issues for this appeal: 1) whether the ALJ failed to follow the correct

---

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy. If the claimant cannot meet the demands, he or she will be found disabled. *Id*. §§ 404.1520(f)(1), 416.920(f)(1). To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns. When the findings made with respect to claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled. *Id*. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 (1994)("Medical-Vocational Guidelines").

procedure in determining whether her impairment met a listed impairment; 2) whether the ALJ failed to adequately develop the record; 3) whether the ALJ's decision was based upon and impermissible selective reading of the record; and 4) whether the ALJ's hypothetical question was flawed because it failed to list all of Plaintiff's impairments.

*Issue 1*

Plaintiff essentially argues that the ALJ erred in not finding that she met or equaled Medical Listings 11.02 and 11.03. Pl.'s Brief pp. 7-10. Specifically, Plaintiff argues that in lieu of a doctor's statement, the ALJ should have accepted diary accounts of seizure activity written by her sister, Tabitha Oswalt, and that the Commissioner should have also considered letters written by others giving descriptions of her seizure activity. Pl.'s Brief pp. 8-10. Plaintiff suggests that because her treating physicians never witnessed her seizures, this information provides sufficient objective proof under the listings. Pl.'s Brief p. 8.

Medical Listings 11.02 and 11.03 set forth a combination of medical conditions and resulting limitations, which, if equaled, direct a finding of disability at step three of the sequential evaluation process. See 20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 11.02 and 11.03.

Listing 11.02 provides as follows:

> Epilespy–convulsive epilepsy, (grand mal or psychomotor), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once a month in spite of at least 3 months of prescribed treatment. With:
>
> A. Daytime episodes (loss of consciousness and convulsive seizures) or
>
> B. Nocturnal episodes manifesting residuals which interfere significantly with activity during the day.

*See* 20 C.F.R. Pt. 404, Subpt. P, App. I, Listing of Impairments, Listing 11.02.

5

Listing 11.03 provides as follows:

> Epilepsy–nonconvulsive epilepsy (petit mal, psychomotor, or focal), documented by detailed description of a typical seizure pattern, more frequently than once weekly in spite of at least 3 months of prescribed treatment. With alteration of awareness or loss of consciousness and transient postictal manifestations and unconventional behavior or significant interference with activity during the day.

*See* 20 C.F.R. Pt. 404, Subpt. P, App. I, Listing of Impairments, Listing 11.03.

The preamble of Section 11.00 states that to meet the relevant Medical Listing evidence requires "at least one detailed description of a typical seizure . . . ." *See* 20 C.F.R. Pt. 404, Subpt. P, App. I, Listing of Impairments, Listing 11.00. It further states that "the reporting physician should indicate the extent to which [the] description of seizures reflects his own observations and the source of ancillary information." *See id.* As well, the Medical Listing states: "Testimony of persons other than the claimant is essential for description of type and frequency of seizures if professional observation is not available." *See id.*

Additionally, the Social Security Administration issued Social Security Ruling 87-6 to explain the policy of evaluating epilepsy when determining disability. According to that ruling, an ongoing relationship with a treatment source is necessary and "there must be a satisfactory description by the treating physician of the treatment regimen and response, in addition to corroboration of the nature and frequency of seizures to permit an informed judgment on impairment severity." *See* SSR 87-6. As well, the ruling states that a "purchased examination cannot provide authoritative description of findings." *See id.*

In support of her determination that Plaintiff did not have an impairment that met or medically equaled Listings 11.02 or 11.03 (Tr. 14), the ALJ noted that there was "no medically documented description of seizure activity" and that there was "no documented evidence of

6

seizures occurring at Listing level frequency" (Tr. 15). During the administrative hearing, the ALJ made light of the fact that Plaintiff had maintained an ongoing relationship with her treating source and that her drug levels were consistently within therapeutic range. (Tr. 244). However, the ALJ indicated that she would hold the record open for a statement from Plaintiff's doctors corroborating the fact that she was having seizures and expressing an opinion about why she continued to have seizures despite ongoing treatment. (Tr. 244-45, 254). Of course, in her decision, the ALJ indicated that Plaintiff's doctor failed to provide the requested information. (Tr. 15).

According to Plaintiff, the ALJ should have accepted her sister's diary entries as objective evidence of her seizures. On May 16, 2005, Ms. Oswalt indicates that Plaintiff had three grand mal seizures within the space of four hours. (Tr. 136-37). Of one of the seizures, Ms Oswalt indicates that it "lasted for a few minutes" and that Plaintiff passed out for "a little while" and woke up "a bit disoriented." (Tr. 136). Ms. Oswalt indicated that on July 6, 2005, Plaintiff had three grand mal seizures within the space of two hours. (Tr. 137). Her descriptions of these seizures are much more detailed, including that she passed out each time and, during one episode, even fell and hit her head. (Tr. 137-39). Additionally, Plaintiff submits the Commissioner should have accepted additional letters written by her family members and fiancé, describing her seizures. (Tr. 225-234).

The Court finds these statements hardly measure up to "objective confirmation" of Plaintiff's seizures. First, none of these people appeared and testified during the administrative hearing. Second, though the letters submitted give descriptions of Plaintiff's seizures, they say very little to nothing about their frequency. Third, contrary to Plaintiff's contentions, none of the proffered statements can replace an explanation from Plaintiff's treating source regarding her response to treatment.

The medical evidence shows Plaintiff's blood drug levels have been consistently normal.

(Tr. 178-79, 186,183, 220-21). Nonetheless, her reports of seizure activity suddenly increased after years of her being virtually seizure free. The first report of a seizure following the removal of Plaintiff's brain tumor was in September 1998. (Tr. 160, 194). Following this, the next documented report of seizure activity was in June 2001. (Tr. 187). It was noted that she had been on Tegretol 200 mg three times a day but continued to have seizures. (Tr. 187, 190). Of course, there is no indication of the nature or frequency of these seizures. Nonetheless, Plaintiff's Tegretol was changed to Carbatrol 200 mg 2 capsules twice a day. (Tr. 187-88). On June 22, 2001, Plaintiff reported no seizures or staring episodes since her last visit. (Tr. 184). At the time, she was in school at Delta State University, majoring in special education. (Tr. 184). On August 9, 2001, she reported no seizures and only 5 staring episodes that all lasted for "a few seconds." (Tr. 182). Her Carbatrol was increased to 500 mg twice a day on August 17, 2001. (Tr. 183). On December 17, 2001, Plaintiff reported no seizures and no staring spells on the Carbatrol 500 mg. (Tr. 180).

The next documented treatment for seizures was in July 2004, almost three years later, when Plaintiff reported some staring spells (1 in April, 3 in May and 3 in July), but no grand mal seizures. (Tr. 177). Then, her regimen was changed to include both Carbatrol and Keppra. (Tr. 177). In December 2004, Plaintiff's Keppra was increased to 500 mg twice a day with the report of having had only one grand mal in September and four "absent type" seizures in November. (Tr. 218). Plaintiff's next visit was on February 14, 2005. (Tr. 215). She reported grand mal seizures at 1-2 per month and "small" seizures at 3-4 per week. (Tr. 215). It was noted that Plaintiff reported that Keppra had helped her and reduced the number of her seizures from 2-3 grand mal seizures per day to only 1. (Tr. 215). That day, Lamictal was added to Plaintiff's regimen of Keppra 500 mg (3 b.i.d.) and Carbatral 500 mg (b.i.d.). (Tr. 215, 218). Plaintiff's next visit was

8

on July 18, 2005. (Tr. 214). Plaintiff reported 3 grand mal seizures per month, all three in one day, and two "small" seizures per week. (Tr. 214). Plaintiff reported that she had been taking 1,000 mg of Keppra twice a day. It was noted, however, that Plaintiff should have been taking 1500 mg of Keppra twice each day. (Tr. 214). Plaintiff had reported that Keppra "worked best." (Tr. 214). She was ordered to "go back on Keppra to 1500 BID" (sic.), and she was told to return when her Lamictal was up to 100 mg twice a day. (Tr. 214).

As found by the ALJ, the evidence in this case of the nature and frequency of Plaintiff's seizures consists almost entirely of her subjective reports (which the ALJ found not entirely credible). Additionally, it appears that Plaintiff's report of increased seizure activity came during a time when she was not completely compliant with her medication. Ultimately, though the ALJ held the record open for a statement from Plaintiff's doctor regarding her response to treatment, no such statement was obtained by Plaintiff. Plaintiff offers no real explanation for this failure in her brief. Therefore, the Court finds Plaintiff failed to meet her burden of proving that she suffered from a listing level impairment.

*Issue 2*

Plaintiff argues the ALJ failed to adequately develop the record because she failed to recontact "Dr. Thomas." Pl.'s Brief pp. 11-12. The Court finds this issue is without merit. The record indicates that at all relevant times Plaintiff was treated at the Tupelo Neurology Clinic. Her treatment was initially followed by Dr. David Doorenbos (Tr. 160-161), and she also saw Dr. Samuel Newell (Tr. 187-88). During many visits, however, Plaintiff was seen by nurse practitioners; and one of these nurse practitioners was Anita Thomas. (Tr. 180-85, 214-18). As stated above, the ALJ held the record open for a statement from Plaintiff's treating physician regarding her response to treatment. This statement was never provided. Plaintiff suggests the

9

ALJ should have contacted her physicians herself. Pl.'s Brief p. 12. This argument is frivolous considering that the ALJ described to Plaintiff's representative during the administrative hearing the exact statement she needed from Plaintiff's treating source and that Plaintiff's representative agreed to provide the information but didn't. (Tr. 254-55). Therefore, in light of Plaintiff's burden to prove disability, the ALJ committed no error.

*Issue 3*

Here, Plaintiff argues the ALJ's finding that there was no objective evidence of her seizures is based on a selective reading of the record as a whole. Pl.'s Brief pp. 13-14. Specifically, Plaintiff claims the ALJ failed to consider all of the "testimony" of witnesses which she claims proved the occurrence of seizures. Pl.'s Brief p. 14.

As discussed above, none of the persons who wrote statements regarding Plaintiff's seizure activity actually testified at the hearing. Moreover, with the exception of the diary entries of her sister, the proffered statements say little to nothing about the frequency of Plaintiff's seizures. And, they cannot replace a statement from Plaintiff's doctor regarding Plaintiff's response to treatment. Accordingly, the ALJ had good reason to assign very little weight to these statements.

*Issue 4*

Plaintiff argues that a hypothetical question submitted to the vocational expert, Dr. Jerry Rowzee, was flawed because it failed to take into consideration the effects of "the absence of the workplace" that her seizures would place on her and the effects of her having a seizure at work. Pl.'s Brief pp. 15-16. Additionally, Plaintiff claims the ALJ did not consider the "residual effects" that seizures would have on her and seizure triggers, including flashing lights from a photocopy machine.

When a hypothetical question reasonably incorporates all of the 'disabilities' found by the

ALJ and claimant's representative was provided an opportunity to "correct any defect" about additional limitations, the hypothetical question is sufficient. *See Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994).

In this case, Plaintiff points to absolutely no evidence in the record supporting these additional limitations she claims the ALJ failed to consider. Accordingly, the ALJ's statement that the hypothetical individual would be "unable to drive, unable to work around workplace hazards, unable to climb ladders, ropes or scaffolds. . ." (sic) (Tr. 251) is supported by substantial evidence in the record.

## **Conclusion**

Based on the foregoing, it is the opinion of the Court that the decision of the Commissioner be affirmed and that this appeal be dismissed. A final judgment consistent with this opinion will be entered.

SUBMITTED THIS 31st day of March, 2008.

/s/ Eugene M. Bogen
U. S. MAGISTRATE JUDGE